**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

CRAIG CUNNINGHAM,

         Plaintiff,

   v.

ZEETO GROUP, LLC and STEPHEN GOSS,

        Defendants.

No. 4:17-cv-00882-ALM-CAN

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(5), and (b)(6), and Local Rule CV-7,

Defendants ZeetoGroup, LLC ("Zeeto") and Stephan Goss ("Goss") respectfully submit this

memorandum in support of their motion for an order dismissing Plaintiff's Complaint (ECF 1).

## I. <u>INTRODUCTION</u>

This is a Telephone Consumer Protection Act ("TCPA") case brought by a serial litigant

who has clogged the federal court dockets with more than 100 TCPA cases since 2014. The

current Federal Communications Commission ("FCC")[1] Chairman, Ajit Pai, has emphasized that

"the TCPA has strayed far from its original purpose" and "become the poster child for lawsuit

abuse." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30

FCC Rcd. 7961, 8073, (2015) (Pai, dissenting). In broad, conclusory brush strokes, Plaintiff

claims that Defendants violated the TCPA by allegedly sending him via autodialer several

unsolicited text messages specifically addressed to a woman named "Lynda" in violation of the

TCPA. He also asserts that Defendants violated the TCPA by purportedly failing both to

---

[1]     The FCC is the federal agency charged with enforcing the TCPA.

maintain an internal do not call list and to train its employees on the use of such list.

While his factual allegations are sparse, what he does not say speaks volumes. Plaintiff provides no factual support for his accusations about the alleged use of an autodialer. Nor does he support with facts his claims that Defendants do not maintain an internal do not call list or train on its use. Plaintiff does not even claim to have suffered any injury – traceable to the alleged TCPA violations or otherwise. Between its scant factual allegations, numerous conclusory assertions, and theories of liability unsupportable by the few facts actually pled, Plaintiff's Complaint epitomizes everything that Chairman Pai identified as wrong with the TCPA today. It should be dismissed for a host of independent reasons.

First, Plaintiff lacks Article III standing. He does not claim any concrete injury beyond the bare statutory violations he alleges. However, even if he had, his Complaint fails to explain how any harm suffered could be traced to Defendants' alleged use of an autodialer. It is not a violation of the TCPA to send a manually dialed, unsolicited text message; it is not a TCPA violation to send 100 manually dialed, unsolicited text messages seriatim. Rather, it is a TCPA violation to send an autodialed, unsolicited text message. Accordingly, as numerous courts have held, a plaintiff must demonstrate that any injury he suffered was due to the defendant's use of an autodialer. Plaintiff has not met that burden. He also is without Article III standing because, as a professional plaintiff who has boasted about "baiting" companies into lawsuits and authored blogs about "TCPA enforcement for fun and profit," he falls outside the TCPA's zone of interest. Put simply, he is not the type of consumer whom the TCPA's drafters intended to protect.

Second, Plaintiff's claim that Defendants violated the TCPA by allegedly failing to maintain an internal do not call list and to train their employees on the use of that list – aside

from being at odds with reality[2] – is not supported by facts and rendered legally baseless by Plaintiff's own allegations. Hopes, suspicions, and conclusory assertions are no substitute for the well-pled factual allegations demanded by the Supreme Court after its decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In addition, the claim fails under Rule 12(b)(6) because the provision of the TCPA that Plaintiff alleges was violated applies, by its express terms, only to "residential" landline calls. Plaintiff has alleged texts to his cell phone only. Thus, there can be no violation of the TCPA's internal do not call list rules. Plaintiff's allegation that Defendants violated the TCPA by using an autodialer to send him the text messages suffers from the same fatal defect as his other TCPA claim: it asserts conclusory allegations merely parroting the TCPA's definition of "automatic telephone dialing system" (also referred to as an "ATDS" or "autodialer"). Threadbare recitals of the elements of a TCPA cause of action are not enough.

Third, the Texas fiduciary shield doctrine precludes the Court from exercising personal jurisdiction over Defendant Goss, Zeeto's Chief Executive Officer. Goss is a citizen of California with no continuous and systematic activities within Texas. He does not own property in the State or otherwise have ties to the State. Nor does he compose, type, or execute Zeeto's text messages; he is not the proverbial "boots on the ground" of Zeeto's day-to-day texting operations. Rather, Goss, like other CEOs, is in charge of Zeeto's overall corporate vision and strategy. Plaintiff does not plead otherwise. Indeed, Plaintiff describes Goss as "direct[ing]" Zeeto and, at best, being involved in texting only "as part of the regular business operations of Zeeto[.]" Compl. ¶¶ 7–8. Personal jurisdiction over Goss is lacking and dismissal pursuant to

---

[2]     Although not a basis for this Motion, prior to this suit, Zeeto provided Plaintiff with a copy of its written do not call policies pursuant to his pre-suit request. Those policies demonstrate the fact that Zeeto both maintains an internal do not call list and instructs its personnel on how that list is updated and used, rendering Plaintiff's allegations unfounded. Defendants intend to serve a Fed. R. Civ. P. 11 letter on Plaintiff shortly demanding the withdrawal of this TCPA claim.

Rule 12(b)(2) is warranted.

Finally, neither Defendant was properly served in this case. Rather than serve an officer, manager, or member of Zeeto, as a limited liability company, or its registered agent, Plaintiff's process server served an unidentified "Jane Doe." Service also was made on the same Jane Doe with respect to Goss despite Fed. R. Civ. P. 4(e)'s requirement that service on Goss be made personally, at his residence, or through his authorized agent, and despite the requirement under Texas Rule 106 and 107 that Goss be served personally or through registered or certified mail (with a return receipt). Plaintiff's failure to properly serve either Defendant constitutes yet another ground for dismissal.

For any and all of these reasons, the Court should dismiss Plaintiff's complaint.

## II. **PLAINTIFF'S ALLEGATIONS**

Plaintiff asserts that, over a 41-day period between October 22 and December 1, 2017, he received nineteen "promotional type" text messages from the same SMS short code without his consent. Compl. ¶¶ 7, 9–10. The text messages offered gift cards for restaurants and consumer products, and referenced the website "getitfree.us," which is owned and operated by Defendant Zeeto. *Id*. ¶ 7. Each one of the text messages was addressed to a specific individual named "Lynda." *Id*. ¶ 9.

Without any additional facts, Plaintiff asserts in a conclusory fashion that "[e]ach and every message above was initiated using an automated telephone dialing system," often referred to as an "ATDS" or "autodialer," and that the use of an alleged autodialer to send the unsolicited text messages constitutes a violation of the TCPA. *Id*. ¶ 11. Plaintiff also claims that Defendants violated the TCPA by allegedly failing to maintain an internal do not call list and train its call representatives on the use of such list. *Id*. ¶¶ 13, 16. With respect to Defendant

Goss, Plaintiff alleges that he is the Chief Executive Officer of Zeeto, and that he "directed this text messaging campaign to the Plaintiff's cell phone as part of the regular business operations of Zeeto." *Id.* ¶¶ 7–8.

## III. LEGAL STANDARDS

### A. Dismissal for Lack of Standing Under Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) governs challenges to a court's subject matter jurisdiction to hear a particular case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A federal court does not have the power to hear cases where Article III standing is not satisfied. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018). To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation – "there must be a causal connection between the injury and the conduct complained of"; and (3) redressability – "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). The "injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (internal citation omitted). The plaintiff bears the burden of establishing standing for "each particular claim that he asserts." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730, 733 (1st Cir. 2016). When ruling on a Rule 12(b)(1) motion to dismiss, a court may consider extrinsic evidence and documents beyond the complaint. *Ramming*, 281 F.3d at 161. On a motion attacking subject matter jurisdiction, the allegations of

the complaint will not be cloaked with a presumption of truth, as they are on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) ("In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations."); *Banks v. United States*, 190 F. Supp. 3d 618, 624–25 (E.D. Tex. 2016) ("When a defendant makes a factual attack [on subject matter jurisdiction,] no presumptive truthfulness attaches to plaintiff's allegations" (citation and internal quotations omitted).).

### B.     Dismissal for Lack of Personal Jurisdiction Under Rule 12(b)(2)

When presented with a motion challenging personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of establishing that the Court has personal jurisdiction over the defendant, the absence of which is grounds for dismissal. Fed. R. Civ. P. 12(b)(2); *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1332 (5th Cir. 1986). Personal jurisdiction is governed by the Texas long-arm statute, which authorizes personal jurisdiction to the extent permitted by the Due Process clause of the U.S. Constitution. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). The Due Process Clause, in turn, requires that the defendant have "minimum contacts" with the jurisdiction and that the exercise of jurisdiction not violate traditional notions of fair play and substantial justice. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). A defendant's contacts with the forum can create general jurisdiction only if the defendant's activities within the state are continuous and systematic, or specific jurisdiction if the suit itself arises from the defendant's specific course of action in the forum. *Id.* Additionally, "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (citing

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

### C.       Dismissal for Insufficient Service of Process Under Rule 12(b)(5)

Insufficient service of process is also grounds for dismissal.  Fed. R. Civ. P. 12(b)(5).  A defendant may raise such a defense in a pre-answer motion despite appearing before the court to do so.  Fed. R. Civ. P. 12(h).  Service must be made according to federal law or the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(2).  Upon challenge by a defendant, the plaintiff bears the burden to show sufficient service of process.  *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985).

Under the Federal Rules of Civil Procedure, service on an individual may be made by "delivering a copy of the summons and the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2).  Texas similarly requires service to be perfected personally or through "registered or certified mail, return receipt requested."  Tex. R. Civ. P. 106(a).  If service is made by mail, then a return receipt is required.  Tex. R. Civ. P. 107.  With respect to a corporate defendant, federal law requires process to be delivered "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. (h)(1).  For limited liability companies like Zeeto, Texas demands that delivery be made to either (1) the registered agent or (2) a manager, if manager-managed, or a member, if member-managed.  Tex. Bus. Orgs. Code §§ 5.201, 5.255(3).

### D.       Dismissal For Failure to State a Claim Under Rule 12(b)(6)

The purpose of a motion to dismiss made under Rule 12(b)(6) is to test the legal

sufficiency of a complaint. *Mackin v. Carpenter*, 988 F.2d 1212 (5th Cir. 1993); *Quadri v. McHugh*, No. 5:14CV35, 2015 WL 124550, at *4 (E.D. Tex. Jan. 7, 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570. The *Iqbal* Court emphasized the distinction between factual contentions and legal conclusions, and cautioned against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. at 678; *Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 286 (5th Cir. 2016) (threadbare recitals of the elements of a cause of action "do not suffice"). At the pleading stage, only well-pled factual allegations are entitled to a presumption of truth. *XP Innovations Inc. v. Black Rapid, Inc.*, No. H-13-1856, 2013 WL 6230368, at *2 (S.D. Tex. Dec. 2, 2013).

As the Supreme Court has elaborated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

*Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. . . [w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Hale v. King*, 642 F.3d 492, 503 n.35 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal citations omitted). After *Twombly* and *Iqbal*, "'complaints in civil actions [must] be alleged with greater specificity than previously was required.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

IV.        <u>**ARGUMENT**</u>

   A.    **Plaintiff Lacks Article III Standing**

Plaintiff does not have Article III standing that allows him to proceed in federal court on his TCPA claim for three reasons. First, he does not claim to have been harmed in any way or suffered any Article III injury whatsoever. Indeed, his Complaint is utterly devoid of any such allegation – even the words "injury," "harm," or "damage" are conspicuously absent from the pleading (aside from two references to "statutory damages" available under the TCPA generally). Plaintiff does not allege any actual damages in this case. Rather, his entire purported injury is premised upon a bare statutory violation for which he seeks statutory damages. Plaintiff has asserted the quintessential "bare procedural violation" that the Supreme Court held in *Spokeo v. Robins* would not support standing. 136 S. Ct. 1540, 1549 (2016). Without an attendant, cognizable injury-in-fact stemming from the alleged TCPA violation, Plaintiff lacks Article III standing.

Second, even if Plaintiff had alleged injury beyond the mere purported statutory violation (and he has not), he has not pleaded how any harm he suffered is traceable to Zeeto's alleged use of an ATDS. A plaintiff alleging a TCPA claim must demonstrate that the injury complained of is connected to the specific TCPA violation, namely, the use of an autodialer. *Spokeo*, 136 S. Ct. at 1547. In *Ewing v. SQM U.S., Inc.*, for example, the plaintiff alleged that "he actually incurred a specific charge for Defendants' call to his cellular telephone." 211 F. Supp. 3d 1289, 1293 (S.D. Cal. 2016). Upon the defendants' standing challenge, the court held that the third element of Article III standing (traceability) was not met because, even assuming that the plaintiff was charged for the call, the plaintiff:

   [C]annot connect this claimed charge with the alleged TCPA violation –

Defendants' use of an ATDS to dial his cellular telephone number. Put differently, plaintiff does not, and cannot, allege that Defendants' use of an ATDS to dial his number caused him to incur a charge that he would not have incurred had Defendants manually dialed his number, which would not have violated the TCPA.

*Id.*; *see also Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1263 (S.D. Cal. 2016) ("To the extent Plaintiff was unaware of any of Defendants' calls either because her ringer or phone were turned off, or because she did not have her phone with her when the calls occurred, none of her alleged injuries in fact are plausible or could be traceable to the alleged TCPA violation.").

*Ewing* and *Romero* are not alone. Last year, this same principle was embraced in a case alleging TCPA "junk fax" violations. *See ARCare v. Qiagen N. Am. Holdings, Inc.*, No. CV 16-7638, 2017 WL 449173, at *1 (C.D. Cal. Jan. 19, 2017). In *ARCare,* the plaintiff alleged that, as a result of the faxes it received, which did not include the opt-out notices required by the TCPA, it "lost paper, toner, ink, and time that could have otherwise been spent on business activities." *Id.* In granting the defendant's motion to dismiss, the court explained:

The TCPA does not prohibit the sending of any fax; it applies only to unsolicited advertisements which do not include an appropriate opt-out notice. Plaintiff does not attempt to show how it was injured by the receipt of faxes with opt-out notices which failed to fully comply with the TCPA, instead alleging harm which would result from the receipt of any fax.

*Id.* at *4. Had the faxes "fully complied with the TCPA, Plaintiff would have lost the same amount of ink, toner, paper and time. In such situations, a plaintiff lacks standing." *Id.*

Here, Plaintiff claims to have received nineteen autodialed text messages for which he had not provided prior express consent. Compl. ¶ 10. The Complaint, however, is devoid of any allegation of injury. Yet, even if such facts existed, Plaintiff has not – and cannot – allege that an autodialed text would constitute any harm different than if the text were manually dialed, which

indisputably would not be a TCPA violation as manually dialed text messages do not require any consent from the recipient. Plaintiff has failed to satisfy the traceability element necessary to satisfy standing.

Finally, Plaintiff lacks standing because he is not a member of the class of persons that the TCPA was designed to protect. The TCPA was enacted to protect consumers from unwanted, intrusive telephone calls. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370, 372 (2012) (the purpose of the TCPA is to remedy "certain practices invasive of privacy" and "intrusive, nuisance [telemarketing] calls") (citations omitted); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 797 (W.D. Pa. 1997) (citing *Mims*). As this Court explained in *Morris v. Unitedhealthcare Ins. Co.*, "[o]ther federal courts have held that professional plaintiffs do not have standing to sue under the TCPA" because those plaintiffs do not fall within TCPA's "zone of interest." No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016) (Nowak, J.)[3] (citing *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016), and *Stoops*). In *Morris*, Judge Nowak specifically noted that, although that plaintiff had filed "a significant number of TCPA cases" – at least 36 lawsuits – he did not yet rise to the level of "professional plaintiff" such that he would fall outside the zone of interest and not have standing. *Id*. The Court cautioned, however, "that TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny on the issue of standing in light of *Spokeo*." *Id*.

This is exactly the kind of TCPA suit that Judge Nowak envisioned. Plaintiff is a serial litigant who has filed at least 100 TCPA lawsuits since 2014 (not including this case). *See* Exh.

---

[3]    Judge Nowak's Report and Recommendation granting the defendant's motion for summary judgment in *Morris* was adopted on December 6, 2016. *See Morris*, Mem. Adopting Report and Recommendation of United States Magistrate Judge (ECF 70).

"1" attached hereto.[4]  Plaintiff makes no mystery about his choice to operate as a professional

plaintiff.  For example, Plaintiff has authored blogs (under the screen name "codename 47") such

as "TCPA enforcement for fun and for profit up to 3k per call";[5] prided himself on suing

companies even where he knew that no TCPA violation had occurred ("I just filed before they

had violated yet and dismissed it later"), Exh. 3 at 5; boasted about his TCPA settlements sharing

"how much it was worth for me to go away," Exh. 3 at 6; and aspired to author a book entitled,

"Tales of a Debt Collection Terrorist: How I Beat the Credit Industry At Its Own Game and

Made Big Money From the Beat Down."[6]  His "motives [are] fun and profit."  *Id.*  Indeed,

Plaintiff's never-published book's co-author described Plaintiff's "baiting" strategy for

---

[4]      Exhibit 1 is a table compiling every TCPA lawsuit filed by Plaintiff of which Defendants are aware.  This Court may take judicial notice the fact that the same Plaintiff has filed a number of prior TCPA lawsuits.  *Rachel v. U-Haul*, No. 1:17-cv-566, 2017 WL 4993434, at *2 n.1 (S.D. Ohio Sept. 1, 2017); *Crozier v. Endel*, 3:09-cv-00535, 2010 WL 5141766, at *4 (D. Nev. Dec. 10, 2010) ("The Court takes judicial notice of the large number of civil cases that Plaintiff has filed") (citation omitted).  Ten of those suits were filed in the Eastern District of Texas, with all having been assigned to this Court.  *See* Exh. 1, at Rows 1-3, 7, 8, 12, 19, 29, 32, 33.  The Court may take judicial notice of the dockets in Plaintiff's other cases.  *Johnson v. Director, TDCJ-CID*, No. 6:12CV340, 2012 WL 3135647, at *1 (E.D Tex. May 29, 2012).

[5]      A copy of this since-deleted blog was attached to the Retail Industry Leaders Association's 2017 comments in response to a pending FCC petition filed by Plaintiff requesting that the FCC require the heightened type of TCPA consent (prior express **written** consent) for all types of calls.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Comments of the Retail Industry Leaders Association, Fed. Communications Comm'n CG Docket No. 05-338, at Exh. E (Mar. 10, 2017) (*available at* https://ecfsapi.fcc.gov/file/10310251423131/Comments%20of%20the%20Retail%20Industry%20Leaders%20Assoc iation.pdf).  A copy of that blog post also is attached hereto for the Court's convenience at Exhibit "2."  The Court may take judicial notice of Plaintiff's blog post attached to the Retail Industry Leaders Association's comment.  *Gusman v. Comcast Corp*., No. 13CV1049, 2014 WL 2115472, at *5 (S.D. Cal. May 21, 2014) ("The Court may take judicial notice of information made 'publicly available by government entities' and whose authenticity no party disputes, such as declaratory ruling petitions filed with the FCC, and subsequent filings by the FCC and other parties on the same docket.") (internal citations omitted).  Another version of the blog post, which contains Plaintiff's subsequent dialogues with commenters, was attached as Exhibit 3 to the defendant's motion to dismiss in *Cunningham v. Local Lighthouse*, No. 3:16-cv-02284 (M.D. Tenn. Mot. filed Oct. 14, 2016), and is attached hereto as Exhibit "3" for the Court's convenience.  The Court may take judicial notice of the exhibit filed in *Local Lighthouse*.  *Simms v. Jones*, No. 3:11-CV-0248-M, 2011 WL 5978594, at *2 (N.D. Tex. Nov. 30, 2011) ("[T]he Court takes judicial notice of the articles for the limited purpose of showing what facts were disclosed to the public and will not otherwise consider them."); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012) ("In moving to dismiss, Defendants presented various Internet postings.  The Court takes judicial notice of those items.  Defendants rely on these documents not for their truth, but merely to show that those statements were made.  The fact that these Internet postings were made and their written content is not disputed in this case."), *aff'd sub nom.*, *Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013).

[6]      Sean Murray, *'Debt Collection Terrorist' Wants FCC to Get Rid of Implied Consent in TCPA*, DeBanked (Feb. 9, 2017) (*available at* http://debanked.com/2017/02/debt-collection-terrorist-wants-fcc-to-get-rid-of-implied-consent-in-tcpa/) (last accessed Feb. 7, 2018).

drumming up lawsuits. *Id*. (quoting Plaintiff's co-author).

Plaintiff does not seek to avoid telemarketing calls but, rather hopes for them so that he can file lawsuits and/or seek to extort pre-suit nuisance settlements. Indeed, if an experienced TCPA litigant such as Plaintiff did not want to receive such calls, it calls into question why he has not registered his telephone number on the National Do Not Call Registry or did not simply responded "STOP" to the first text message that he received from Zeeto. Plaintiff is not the type of consumer that the TCPA is designed to protect. He, therefore, falls outside the statute's zone of interest and lacks standing under Article III. *See*, *e.g.*, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) ("A plaintiff pursuing an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have engaged in conduct which manifests a voluntary consent to the invasive actions of defendant.").

**B.     Count I Should Be Dismissed Because Section 227(c)(5) Does Not Extend to Cellular Telephones and Plaintiff Has Not Alleged a Viable Do Not Call Claim in Any Event**

In Count I of his Complaint, Plaintiff claims that the text messages he received "violated the TCPA, 47 USC 227(c)(5) as they [Defendants] failed to maintain a do not call list and train their agents on the use of it." Compl. ¶ 16. This claim fails for several reasons.

First, this allegation is wholly conclusory, which the Court does not accept as true for purposes of a motion to dismiss. *Jackson v. United States*, 68 F.3d 471 (5th Cir. 1995) (affirming dismissal against pro se litigants and explaining that, on a Rule 12(b)(6) motion, "[t]he plaintiff must plead specific facts, not mere conclusory allegations. This court will not accept as true conclusory allegations or unwarranted deductions of fact" (internal citation omitted).). Plaintiff fails to plead specific facts supporting his assertion that Defendants do not

13

maintain an internal do not call list or train their representatives on its use.  Such failure on its own justifies dismissal.

Second, Plaintiff's Section 227(c)(5) claim fails as a matter of law.  That provision of the TCPA provides for a private right of action for violations of the FCC's regulations promulgated to "to protect **residential** telephone subscribers' privacy rights to avoid receiving telephone solicitations **to which they object.**"  47 U.S.C. § 227(c) (emphasis added).  To ensure that consumers do not receive telemarketing calls "to which they object," the FCC adopted the National Do Not Call Registry on which consumers could place their residential telephone numbers.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 Fed. Reg. 44144-01, at ¶ 3 (July 25, 2003) ("We [the FCC] conclude that the record compiled in this proceeding supports the establishment of a single national database of telephone numbers of residential subscribers who object to receiving telephone solicitations.").  Pursuant to the FCC's regulations, which are embodied in 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a **residential** telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d) (emphasis added).  Having a written do not call policy and training those "personnel engaged in telemarketing . . . in the existence and use of the [internal] do-not-call list" are two components of the aforementioned "procedures."  *Id*., § 64.1200(d)(1), (2).

The exact same allegations Plaintiff levies against Defendants in this case were dismissed just a few months ago by the Middle District of Tennessee in another TCPA action brought by Plaintiff.  *See Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017).  There, as here, Plaintiff conclusorily alleged that the defendant

violated Section 227(c)(5) by "fail[ing] to comply with the requirements to maintain and train employees on the use of a do-not-call list." *Spectrum Tax Relief*, Compl. (ECF 1) ¶ 32. *Compare with* Compl. ¶ 16 (alleging that Defendants violated Section 227(c)(5) by "fail[ing] to maintain a do not call list and train their agents on the use of it"). Dismissing Plaintiff's claim, the court confirmed that "the language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Spectrum Tax Relief*, 2017 WL 3222559, at *3 ("The private right of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Because "Plaintiff alleged only calls to his cellular phone," the court held that "he fail[ed] to state a claim for relief under 47 U.S.C. § 227(c)(5)" and dismissed his TCPA claim. *Id.* (citation omitted); *see also Cunningham v. Trilegiant Corp.*, No. 3:15-cv-989 (M.D. Tenn.), Report and Recommendation entered Aug. 26, 2016 (ECF 82) (denying Plaintiff's motion to amend his complaint, which included a Section 227(c)(5) claim, based upon alleged violations of 47 C.F.R. § 64.1200(d), on futility grounds and dismissing operative complaint).

Here Plaintiff pleads in his Complaint that the texts at issue were sent to his cell phone, not a residential telephone number. Compl. ¶ 10. Thus by Plaintiff's own admission, Section 227(c)(5) is inapplicable. Even if that Section or the regulations were applicable to cellular telephones (and they are not), Plaintiff has not pled that his cell number either is registered on the National Do Not Call Registry or set forth on Zeeto's internal do not call list (nor could he as it is not contained on either). Therefore, the underlying purpose of Section 227(c)(5) – to protect residential telephone subscribers from receiving telemarketing messages to which they object – is not implicated. Accordingly, Count I should be dismissed with prejudice.

### C. Plaintiff Fails to Allege Any Facts Supporting His Claim That Defendants Called His Phone With an Autodialer; Count II Should Be Dismissed

The TCPA provides that it shall be unlawful "to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). An "automatic telephone dialing system" is defined to be "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id*., § 227(a)(1). Telemarketing calls to a cell phone, however, may be placed via an autodialer if the recipient has provided his prior express written consent. 47 C.F.R. § 64.1200(a)(2). The FCC recently confirmed that the statute "does not regulate live calls that are manually dialed without an autodialer; [nor does] it . . . ban all automated calls . . ." *ACA Int'l, et al. v. FCC, et al*., No. 15-1211 (D.C. Cir.), Brief for Respondents (Jan. 15, 2016), at 93; *see also*, *e.g.*, *Morris v. Cobart*, No. 4:15-CV-724, 2016 WL 6608874, at *7-8 (E.D. Tex. Nov. 9, 2016) (no TCPA violation where defendant did not utilize autodialer to call plaintiff's cell phone); *Adamcik v. Credit Control Servs., Inc*., 832 F. Supp. 2d 744, 750 (W.D. Tex. 2011) ("Turning to the effect of [TCPA] § 227(b), it has no prohibition or effect at all on ordinary, 'live' phone calls – the statute's express terms limit its application to automatic dialer or prerecorded calls."). In other words, the TCPA's prior express consent requirements are not implicated and no consumer consent is necessary where a company manually dials that consumer's cell phone.

Thus, in order to state a viable autodialer TCPA claim, a plaintiff must "do more than simply parrot the statutory language." *Brailey v. F.H. Cann & Assocs*., No. 6:14-0754, 2014 WL 7639909, at *8 (W.D. La. Dec. 5, 2014) (dismissing TCPA claim) (citing *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; and other

cases); *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("It is insufficient for plaintiff to simply parrot the language of the TCPA and conclusorily allege that defendants used an ATDS."). Courts uniformly hold that "'a bare allegation that defendant[] used an ATDS is not enough.'" *Brailey*, 2014 WL 7639909, at *9 (citations omitted); *see also*, *e.g.*, *Direct Wines*, 2015 WL 4148704, at *2 (allegation that defendants used "Five9 or similar dialing technology" was insufficient to plead the use of an ATDS); *Padilla v. Whetstone Partners, LLC*, No. 14-21079, 2014 WL 3418490, at *1-2 (S.D. Fla. July 14, 2014) (dismissing TCPA autodialer claim where plaintiff merely alleged that defendant used an ATDS to call his cell phone 41 times over a four-month period without his consent, and attached a call log to his complaint showing 21 of those alleged calls); *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. July 7, 2014) ("GE argues that Trumper's TCPA claim fails under *Twombly* and *Iqbal* because Trumper makes only conclusory allegations that GE placed calls using an automatic telephone dialing system or an artificial or prerecorded voice. This argument is well taken."); *Johansen v. Vivant, Inc*., No. 12C7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing TCPA claim where plaintiff failed to elaborate on allegations with anything more than language of the statute).[7] Dismissing the plaintiff's TCPA claims with prejudice in *Brailey*, the Western District of Louisiana found that, while the plaintiff need not plead "'specific technical details'" regarding the defendant's use of an ATDS, "he must at least describe, in laymen's terms, the facts about the call or the circumstances surrounding the call that make it plausible that the call was made using an ATDS." 2014 WL 7639909, at *8 (citations

---

[7]    *See also Baranski v. NCO Fin. Sys., Inc*., No. 13 CV 6349, 2014 WL 1155304, at *4 (E.D.N.Y. Mar. 21, 2014) (dismissing TCPA claim with prejudice and noting that "the vast majority of courts to have considered the issue have found that '[a] bare allegation that defendants used an ATDS is not enough'") (quoting *Jones v. FMA Alliance Ltd*., No. 13-11286, 2013 WL 5719515, at *1 (D. Mass. Oct. 17, 2013)); *McGinity v. Tracfone Wireless, Inc*., 5 F. Supp. 3d 1337, 1340 (M.D. Fla. 2014) (allegations that "[e]ach call the Defendant made to the Plaintiff was made using an 'automatic telephone dialing system'" even coupled with claim that defendant called plaintiff 6,000 times over 45 days held insufficient to state a claim that defendant used an ATDS).

omitted).

Here, just like the plaintiffs in *Brailey*, *Padilla*, *Trumper*, and *Johansen*, Plaintiff does nothing more than state in conclusory terms that Defendants utilized an ATDS to send texts to his cell phone: "Each and every message above was initiated using an automated telephone dialing system." Compl. ¶ 11. Aside from reciting the statutory element, there is not a single factual allegation underlying Plaintiff's assertion. In fact, Plaintiff highlights that each of "[t]he text messages [he received] referenced a 'Lynda' . . . ." *Id.* ¶ 9. The personalized nature of the text messages directed towards a specific individual – *i.e.*, the individual who completed the lead form – militates against the use of an ATDS in the first instance. *See Duguid v. Facebook, Inc.*, No. 15-cv-00985, 2017 WL 635117, at *4 (N.D. Cal. Feb. 16, 2017) (granting dismissal with prejudice where text messages sent from short-code referring to plaintiff's Facebook account "suggested direct targeting that was inconsistent with the existence of an ATDS").

Plaintiff has failed to allege a single fact supporting his ATDS claim. Without such factual allegations, Count I should be dismissed under Rule 12(b)(6).

### D. Personal Jurisdiction Is Lacking As To Defendant Goss

This Court cannot assert personal jurisdiction over Defendant Goss. Consistent with the threadbare allegations pervasive throughout the Complaint, Plaintiff's only individual assertion concerning Goss is the vague assumption that "Stephen [*sic*] Goss directed this text messaging campaign to the Plaintiff's cell phone as part of the regular business operations of Zeeto Group [*sic*], LLC." Compl. ¶ 8. With regard to personal jurisdiction specifically, Plaintiff claims that "[p]ersonal jurisdiction is apparent as the defendants are making calls/text messages to the state of Texas for the purpose of soliciting Texas residents." *Id.* ¶ 5. This conclusory allegation is insufficient to support the Court's exercise of personal jurisdiction over Goss. Quite simply, he

has insufficient contacts with the State of Texas to render the assertion of personal jurisdiction constitutionally permissible.

Goss is the CEO of Defendant Zeeto. Compl. ¶ 7. His duties involve corporate strategy, financial matters, and general responsibility for the company's health and well-being. *See* Exh. 4, (February 7, 2018 Declaration of Stephan Goss ("Goss Decl.") ¶ 2).[8] He does not compose, type, or execute any of the promotional text messages that Zeeto sends to consumers. *Id*. ¶ 3. Further, he did not call, message, contact, or attempt to contact Plaintiff, nor did he personally direct any individual to do so. *Id*. To the extent that Plaintiff's theory is premised on Goss' purposeful availment of the forum state, Plaintiff cannot credibly point to any uncontroverted allegations of Goss's personal direction of business activity to Texas. Goss does not have any of the continuous or systematic contacts with Texas necessary to justify an exercise of general jurisdiction over him, nor has Plaintiff established any basis for personal jurisdiction.

In any event, read more charitably, Plaintiff's Complaint appears to be attempting to bootstrap personal jurisdiction over Goss onto jurisdiction over Zeeto. The Fifth Circuit consistently has held that the fiduciary shield doctrine, "which holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation," *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985), applies to prevent harassment of corporate executives in such situations. This doctrine can be "succinctly paraphrased [as] 'jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation.'" *Id.* at 1197 n.11 (citation omitted). The only way for Plaintiff to circumvent the

---

[8] "The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire v. Ontario Mechanical Sales & Service*, 963 F. 2d 90, 95 (5th Cir. 1992).

fiduciary shield doctrine would be to show that Zeeto, a large enterprise with many employees, were merely an alter ego of Goss. This he cannot do. "Personal jurisdiction must be established based upon corporate officers' individual acts on behalf of the corporation." *Cunningham v. Local Lighthouse*, No. 3:16-cv-02284, 2017 WL 4053759, at *3 (M.D. Tenn. Aug. 7, 2017), report and recommendation adopted, No. 3:16-CV-02284, 2017 WL 4022996 (M.D. Tenn. Sept. 13, 2017). Any contact Plaintiff received came from Zeeto, not Goss, and cannot be used to establish this Court's jurisdiction over Goss.

Plaintiff has unsuccessfully attempted this argument before in other similarly spurious TCPA cases. *See, e.g.*, *Local Lighthouse*, 2017 WL 4053759. In *Local Lighthouse*, the court observed:

> Cunningham's allegations are based solely on Defendants' status as co-owners of Local Lighthouse and his conclusion that they must therefore have had an active role in directing calls to Tennessee. While he broadly alleges that Defendants "had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made," Cunningham does not make these allegations with the "reasonable particularity" required to support a prima facie showing of personal jurisdiction.

*Id.*, at *4. The same analysis here confirms that there is no basis for the Court to exercise specific personal jurisdiction over Goss.

Neither can Goss be found to have submitted himself to the general personal jurisdiction of this Court. Goss has never lived in Texas nor has he ever owned property there. Goss Decl. ¶¶ 4–5. He has never leased property in Texas, *id.* ¶ 6; has never opened or maintained bank accounts in Texas, *id.* ¶ 7; has never opened or maintained an office in Texas, *id.* ¶ 8; has never hired any employees in Texas, *id.* ¶ 9; has never owed or paid taxes to the State of Texas, *id.* ¶ 10; and has never engaged in any business in his individual capacity in Texas. *Id.* ¶ 11. He has traveled to Texas approximately 4 times, including stopovers in Texas airports, during the past 5

years.  *Id.* ¶ 12.  Such paltry contacts hardly amount to being "essentially at home" in Texas.  *See Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011).  Accordingly, this Court cannot find general personal jurisdiction over Goss.

### E.  Service Has Not Been Properly Accomplished

Finally, Plaintiff has failed to accomplish proper service on either Defendant.  Plaintiff bears the burden to show sufficient service of process.  *Norlock*, 768 F.2d at 656.  Here, the affidavits of service Plaintiff filed neither establish nor even suggest that service was properly accomplished.  In identical submissions for both Zeeto and Goss, Plaintiff confusingly submits an affidavit saying only "Served via process server see attached," while the attached document fails to list an address or location and simply states that the documents were left with a "'Jane Doe,' Female, 38 yrs, 5'3", 170 lbs, brown hair and eyes."  *See* ECF 5 at 3; ECF 6 at 3.

Plaintiff apparently engaged someone to attempt service on Defendants at Zeeto's corporate offices in San Diego, California, despite listing in his Complaint – and on the certificates themselves – Zeeto's registered agent's address in Dover, Delaware, and Goss as able to "be served at" a residential address in San Diego.  Compl. ¶¶ 2–3.  Employees of Zeeto report that the process server entered the office, grew frustrated regarding his inability to locate the correct person, and threw the papers onto a table.  Goss Decl. ¶ 13.  Rule 4(h)(1)(b) requires that a corporation be served on an officer, a managing or general agent, or an authorized agent for service.  This did not happen and Plaintiff's certificates of service do not show otherwise.

Plaintiff also has failed to properly serve defendant Goss.  Fed. R. Civ. P. 4(e) requires that an individual within the United States be served either (a) personally, (b) via another resident at his or her home, (c) via a registered agent, or (d) in some other manner in accordance with state law.  Texas Rule of Civil Procedure 106 additionally permits service by registered or

certified mail, return receipt requested. Plaintiff has accomplished none of these options. As noted above, the certificates of service for both Zeeto and Goss mention only service upon a "Jane Doe" at an unspecified address. Defendants have no choice but to understand this to be a reference to the receptionist at a Zeeto office in California. This location was not and is not Defendant Goss' residence, nor is it home to any registered agent for Goss. The procedural rules provide an accommodating regime for service, yet still, "[i]t is axiomatic that in order for there to be in personam jurisdiction there must be valid service of process." *Attwell v. LaSalle Nat. Bank*, 607 F.2d 1157, 1160 (5th Cir. 1979). Plaintiff has not served Goss in a manner that passes constitutional muster and Rule 12(b)(5) dictates that the action must be dismissed.

Plaintiff's failure to properly serve either Defendant adds an additional, independently sufficient reason for dismissal.

## V.        <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint.

Dated: February 7, 2018                 Respectfully submitted,

                                     /s/ *J. Thad Heartfield*
                                     J. Thad Heartfield
                                     Texas State Bar No. 09346800
                                     E-mail: thad@heartfieldlawfirm.com
                                     M. Dru Montgomery
                                     Texas State Bar No. 24010800
                                     E-mail: dru@heartfieldlawfirm.com
                                     THE HEARTFIELD LAW FIRM
                                     2195 Dowlen Road
                                     Beaumont, TX 77706
                                     (409) 866-3318 (Telephone)
                                     (409) 866-5789 (Facsimile)

                                     Daniel S. Blynn (*pro hac vice* to be made)
                                     E-mail: dsblynn@venable.com
                                     Damon W.D. Wright (*pro hac vice* to be made)
                                     E-mail: dwdwright@Venable.com

VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)

*Attorneys for Defendants ZeetoGroup, LLC
and Stephan Goss*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of February, 2018, I have electronically filed a copy of the foregoing Memorandum of Law In Support of Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants. A copy also has been served via first-class mail on:

Craig Cunningham
5543 Edmondson Pike, Suite 248
Nashville, TN 37211


/s/ *J. Thad Heartfield*
J. Thad Heartfield