UNITED STATES DISTRICT COURT
Eastern District of Texas (Sherman)



CRAIG CUNNINGHAM, Pro-se )
)
*Plaintiff* )
) CIVIL ACTION NO.: 4:17-cv-00882
v. )  )
)
Zeeto Group, LLC, Stephen Goss )

*Defendants.*

### **Plaintiff's Response In Opposition to the Defendant's Motion to Dismiss**

1. The Plaintiff now files this response in Opposition to the Defendant's Motion to Dismiss.

### Introduction

2. The Defendants begin their motion with invective and personal attacks, which illustrates the strength, or lack thereof, to logically challenge the Plaintiff's complaint in a proper motion. They make up undefined terms, such as "serial litigant" and unilaterally claim that the Plaintiff is "clogging the Federal court dockets", which no judge has independently found.

3. Although the Defendants quote FCC Chairman Pai, no judge or jury has found that the Plaintiff is abusing the TCPA. In fact, in reviewing the Plaintiff's litigation history and the tired, old "Professional Plaintiff" argument, the Senior Judge Waverly Crenshaw in the Middle District of Tennessee ruled that the Plaintiff had article III standing in a similar "Professional Plaintiff" argument by a defendant in a TCPA case.

4. The Plaintiff withdraws his claims against CEO Stephen Goss without prejudice for now and will be filing an amended complaint pursuant to FRCP 15 in response to the Defendant's motion to dismiss.

5. Additionally, the Plaintiff will re-serve the defendants at their registered agent's address to moot their arguments of improper service.

6. **The Plaintiff's complaint should not be dismissed under FRCP 12(b)(1)**

    The Plaintiff has Article III standing

7. The Plaintiff has article III standing and can easily allege *"injury, harm, and damages"* to include actual damages as a result of the illegal text messages from the defendants. Text messages in this case use up the Plaintiff's limited data plan, waste battery power, shorten the Plaintiff's battery life, deprive the Plaintiff of usage of his phone, take up additional space on the phone's hard drive, constitute an annoyance and invasion of privacy and intrude on the Plaintiff's right to be left alone and free of annoying and unwanted text messages, particularly when the text messages aren't even direct at the Plaintiff.

8. The injury is obviouly tracable to the illegal text messages from Zeeto, and it should be obvious to the dullest of observers. Had the Plaintiff not recieved the offending text messages, the Plaintiff would not have suffered the above mentioned harms.

9. The last argument in the Defendant's motion has already been reviewed and decided by Senior Judge Crenshaw in the Middle District of Tennessee regarding the Plaintiff's Article III standing and ruled that the Plaintiff is within the zone of interest of the statute. The entire order from the judge is attached to this motion as

Exhibit A[1].

10. First, the defendants improperly conflate summary judgment decisions, such as in Morris v United healthcare Ins Co., and Stoops v Wells Fargo Bank as supportive of their motion to dismiss. This is incorrect as these decisions came after the benefit of full discovery and depositions. Here, the Defendants have no supporting evidence and at best offer hearsay internet rumors from defunct websites and citations from unwritten books.

11. In the Rapid Response case, the court held:

12. *Perhaps recognizing that it cannot persuasively challenge an ordinary consumer's standing under the TCPA, the RRMS Defendants argue that Cunningham lacks standing because he is a "professional TCPA plaintiff" who has filed numerous suits under the TCPA, and therefore he suffered no real injury because he, in fact, welcomed any calls that might support a cause of action. (Doc. No. 59 at 1, 7–9.) The RRMS Defendants model their argument in significant part on the reasoning adopted by the Western District of Pennsylvania in Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016), where that court concluded that a TCPA plaintiff lacked standing because her "only purpose in using her cell phones [was] to file TCPA lawsuits" and therefore she did not experience an actual invasion of privacy. Although the RRMS Defendants at this stage lack the substantial record relied upon by the Pennsylvania court, they seek instead to rely on audio recordings of Cunningham's conversations with the relevant telemarketers*

13. and further ruled:

14. *His later pleadings are entirely straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ("The only reason why the Plaintiff faked interest in the calls was to identify the seller of Case 3:15-cv-00846 Document 87 Filed 04/26/17 Page 8 of 22 PageID #: 502 9 goods/services that was behind the calls.")). Cunningham's numerous lawsuits show that he is acutely aware of his rights under the TCPA and the potential that he could reap monetary rewards from them. Whether the Court considers the audio recordings or not, it is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they—presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA.*

15. and further:

---

[1] *Cunningham v. Rapid Response Monitoring* Servs., Inc., et al., Civ. No. 3:15-CV-00846, 2017 WL 1489052 (M.D. Tenn. April 26. 2017

16. *Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no "amateurs only" rule. See Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006)* ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."). *Nor is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury.* The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc., 747 F.3d 489, 492 (7th Cir. 2014). Designing a cause of action with the purpose of enlisting the public in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust3 and civil rights law4 to environmental law5 and false claims. 6 While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

17. and further ruled:

18. *The determinative issue, then, is not Cunningham's motivations, but whether he was injured.* An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. (See Doc. No. 57 at ¶ 78 (stating that Defendants infringed on Cunningham's "right to be left alone")). *Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees.* It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. *But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.*

19. and finally ruled:

20. *If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs—or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them.* The RRMS Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are ignorant of their right to sue under the TCPA. The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. *Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights. The Court sees no authority for the proposition that his privacy interests ceased to exist merely because he realized that he could profit from suing for their invasion.*

21. The court in Rapid Response also conducted an inquiry into the Plaintiff's zone of interest standing and ruled:

22. *The RRMS Defendants' zone-of-interests argument echoes their argument on constitutional standing: they suggest that Cunningham is a professional plaintiff, and that the TCPA only contemplates causes of action arising out of calls to ordinary consumers, a class from which they consider him to be excluded. That argument is flatly refuted by the structure of the TCPA itself. The TCPA does not merely contemplate self-interested plaintiffs—it encourages them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer). The Court cannot read the TCPA and imagine that Congress intended to exclude plaintiffs such as Cunningham. If anything, it intended to recruit them, incentivizing them by offering them such sizable rewards. Cunningham's injuries are well within the zone of interests contemplated by the TCPA, and any interpretation of the TCPA that excluded him would actively frustrate the purpose of the statute.*

23. It isn't the mere unilateral and unsupported declaration of someone being a "Professional plaintiff" that implicates article III standing, as if the Plaintff were officially drafted in the 3rd round into the National Professional Plaintiff's League. No court has ever ruled that simply regularly exercising one's right to due process in light of regular violations of my privacy and solitude somehow diminishes my right to due process. This would be as absurd as barring someone from voting because another individual declares they "vote too much" or barring someone from going to church because someone unilaterally believes they attend church services too much.

24. Although the defendants claim the Plaintiff doesn't seek to avoid telemarketing calls but rather hopes for them to file lawsuits or seek pre-suit settlements, the defendants don't claim that the Plaintiff made any pre-suit settlement demand or any evidence to support their claim.

25. The Plaintiff is not required to register his phone number on any do-not-call list or respond "stop" to a text message that the Plaintiff didn't sign up for any more than

the Plaintiff is required to tell a burgler to stop before tackling them or put a sign on his car saying *"do not steal me"* to have standing to be free from robbery and theft. I don't want my car stolen or house broken into anymore than I hope to receive telemarketing calls.

26. The Defendants fail to say what actions the Plaintiff did to not conduct himself in the manner consistent with an expectation of privacy or how the Plaintiff voluntarily consented to being texted by the defendants, particulary when the defendants acknowledge that it was an incorrect number and have no consent from the Plaintiff.

**The Plaintiff's complaint should not be dismissed under FRCP 12(b)(6)**

**Count I should not be dismissed**

27. The Plaintiff has and can allege many violations of section 227(c)(5) through violations of 47 CFR 64.1200(d) 1-4 and 47 CRF 64.1200(b).

28. A review of the texts shows that none of the text messages contain the required identification of sellers and telemarketers as required by 64.1200(d)(4), it can certainly be alleged that the defendants weren't trained pursuant to 64.1200(d)(2).

29. None of the text messages contain the required identification of 47 CFR 64.1200(b) either, which requires that at the beginning of the message clearly state the identity of the business, individual, or other entity responsible for initiating the call. This can easily be alleged.

30. More to the point, the FCC has already ruled and multiple courts held that for the purposes of 47 CFR 64.1200 a cell phone can be considered a "residential" line. A residential line is defined by the statute as: *A "residential subscriber" is "a subscriber to telephone exchange service that is not a business subscriber."* 47 CFR § 64.

2305(d). *A "[b]usiness subscriber refers to a subscriber to telephone exchange service for businesses."* 47 C. F. R. § 64. 2305(b).

31. Court's have clearly stated that a cell phone can be alleged to be a "residential number" in a complaint: *"It may be that in some cases an individual who relies on a cellular phone may nevertheless fall within the definition of a "residential telephone subscriber" under the act. The Plaintiff must establish that his cellular phone number is used for residential purposes. See Lee v. Loandepot.com, LLC, No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016"* as the court held in Cunningham v Rapid Response Monitoring , MD Tennessee 251 F.Supp.3d 1187 (2017)

32. Just because the Plaintiff recieved the text messages on a cell phone doesn't automatically foreclose on the issue of liability under 47 CFR 64.1200, and as the Plaintiff does not maintain a landline phone and only uses a cell phone at his residence, the Plaintiff's phone is obviously residential line as it is not owned in the name of any business.

## Count II should not be dismissed

33. The Plaintiff can certainly allege that his phone was called using an autodialer. First, the most glaringly obivious determination of the use of an autodialer is that the messages came from a short code: 45894[2], in this case, which is not a phone number. Manually dialed/texted messages never come from short codes and the presence of a short code is a strong indication that an autodialer is being used.

34. Second, the Plaintiff recieved identical, word-for-word messages from the defendants. On October 23, 2017 at 16:24 hours, the Plaintiff recieved the identical text of *"Enter to win a BIG home goods package, kitchen sets, tools, sporting goods & mroe. You also get a FREE cooking Ebook!*[3]*"* The Plaintiff

---

[2] See Text messages generally Exhibit C
[3] See Text messages dated October 23, 2017, Exhibit D and E

recived the exact same message, puncuation, website, word for word at 20:08 hours on the very same day. Identical messages are a strong indication that the messages are being sent using an automated telephone dialing system.

35. The terms and conditions on the getitfree website indicate that they use an automated telephone dialing system when they state: *"When providing us with your mobile number and checking the box to sign up for text message updates and offers, you are providing us with your consent to recive automated phone calls or text messages from or on behalf of Get it Free, some of which may be conducted via an automated dialing system"*[4] which of course begs the question of why seek consent to dial consumers using an automated telephone dialing system if they never intend to dial consumers with an automated telephone dialing system?

36. Finally, evidence produced from Elizabeth Chu of the Getitfree legal department indicates that the defendants use an automated telephone dialing system. First, Elizabeth indicates that my phone number was in their "system" which clearly meets the definition of an automated telephone dialing system as it has the capacity to store and dial phone numbers. Elizabeth provided an exhibit, an internal document[5], showing a purported opt in from someone named "Lynda" and indicates that this signup and information was part of a dialing campaign as it says under campaign: *"Getitfree SMS text"* and lists a field of *"Campaign fields"* including the name of someone named Lynda and the Plaintiff's phone number.

37. The Plaintiff has seen phone records and call detail records and if the court reviewed the Plaintiff's cell phone bill, there will be no reference to a dialing

---

[4]Seehttps://getitfree.us/privacy/
[5]See Exhibit B

campaign or campaign type. This exhibit further indicates that the Plaintiff's number was "stored" in the "system" which has the capacity to "Dial" the Plaintiff's number.

38. Finally, under the program policy: it notes under "Prompt disclosures" upon providing written consent to receiving SMS messages from Get it Free, an individual will receive a welcome message stating the following message, or a message of similar quality: *"Welcome: Congrats! Getitfree has your free samples & giveaways http://getitfree.us/welcome Reply HELP for help, STOP to opt out. 1 msg/day, Msg &data rates may apply."* Indeed, in October 22nd, 2017, the Plaintiff recieved a nearly identical message indicating that this was an automated message already setup in their dialing system to generate when an individual signs up.

39. The defendants are incorrect when they state that "each of the text messages referenes Lynda. Only the first Text message references Lynda. The messages were otherwise generic offers that appeared to be generated to a large number of individuals.

Respectfully submitted, March 1,2018

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, Tn 37211, 615-348-1977

UNITED STATES DISTRICT COURT
Eastern District of Texas (Sherman)

CRAIG CUNNINGHAM, Pro-se )
)
    *Plaintiff* )
) CIVIL ACTION NO.: 4:17-cv-00882
v. )  )

Zeeto Group, LLC, Stephen Goss )

    *Defendants.*

**Plaintiff's Certificate of Service**

I hereby certify a true copy of the foregoing was mailed to the attorney of record for the defendants via USPS first class mail on 3/1/2018

Respectfully submitted, March 1, 2018

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, Tn 37211, 615-348-1977